**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Jane Doe 202a, | ) | C/A No.: 2:16-cv-00777-RMG-MGB |
| | ) | |
| Plaintiff, | ) | Jury Trial Demanded |
| | ) | ) |
| v. | ) | |
| | ) | |
| Leigh Anne McGowan, individually | ) | |
| Charles Francis Wholleb, individually, | ) | |
| Anthony M. Doxey, individually; | ) | |
| Michael Kouris, individually, | ) | |
| City of North Charleston; | ) | |
| Sandra J. Senn, | ) | |
| Senn Legal, LLC, and | ) | |
| Charleston County, | ) | |
| _____ | ) | |

**Complaint**

For her complaint, Plaintiff Jane Doe 202a alleges:

**Parties, Jurisdiction, and Venue**

1.      Jane Doe 202a, referred to in this Complaint as Jane Doe, is an adult citizen

and resident of South Carolina who in November, 2012 returned to South Carolina to

assess her mother, a vulnerable adult with a debilitating and terminal medical condition.

Upon seeing her state, the Plaintiff stayed to assist her mother.  The mother's identity is

protected from the public record by each of (a) an existing South Carolina circuit court

order to that effect and (b) by the provisions of S.C. Code § 43-35-60, which maintains as

confidential information about vulnerable adults in need of protection.  Because these

events began at the residence the Plaintiff then shared with her mother, the Plaintiff is

referred to using a pseudonym.

2.      The Defendants are each bound by the present circuit court order protecting

the mother's identity as to the public record. The identity of the Plaintiff will be disclosed to Defendants upon their written consent to protect Jane Doe's identity from the public record by redacting from the public record both the identity of Jane Doe and information from which her identity can be derived, such as her name, her mother's name, addresses, names of family members or identified neighbors and neighbor addresses. Alternatively, if the Defendants object to the Plaintiff's complying with that existing circuit court order by using a pseudonym, and will provide to Plaintiff's counsel a writing stating their objection to her pseudonym use, then the Plaintiff will submit a motion seeking an order for leave to proceed by pseudonym.

3.    Each of Leigh Anne McGowan, Charles Francis Wohlleb, Anthony Doxey, and Michael Kouris is a citizen and resident of South Carolina, sued individually under federal causes of action. Each of their conduct under state law causes of action is ascribed to his or her employer, the City of North Charleston, through their employment as North Charleston police officers. When referred to collectively, the individual defendant officers are identified as "the NCPD Defendants."

4.    The City of North Charleston is a political subdivision of the State of South Carolina authorized to sue and be sued. It is referred to in this Complaint as the City. The City is sued for money damages and injunctive relief. The City of North Charleston Police Department is referred to in this complaint as the NCPD.

5.    Sandra J. Senn is a citizen and resident of South Carolina doing business in South Carolina, and within the Charleston division, as a practicing attorney. Pertinent to this Complaint, she engaged in tortious conduct that was defamatory *per se* of the Plaintiff, and did so in two of three possible capacities, as set out below.

6.    Senn Legal, LLC, is a domestic limited liability company organized and

2

existing under the laws of South Carolina that at all times pertinent to this complaint had (and has) its principal place of business in Charleston county, and did (and does) business in South Carolina. Its agent for service of process is Sandra J. Senn.

7.    At all times pertinent to this complaint, Senn Legal, LLC acted through its principals, agents, and employees, one of whom was (and is) Sandra J. Senn. At all times pertinent to this complaint, Senn Legal, LLC had a duty to supervise its principals, agents and employees so they complied with state and federal law. Sandra Senn, as a principal in Senn Legal, LLC, had a generalized duty to put into place systematic measures to help prevent tortious conduct, including her own.

8.    In this complaint, defendants Sandra J. Senn and Senn Legal, LLC, are referred to collectively as the "Senn defendants" unless otherwise particularly specified.

9.    As alleged in this complaint, Sandra J. Senn defamed the Plaintiff in writing to third persons. That conduct was intentional, and was undertaken on behalf of Senn Legal, LLC. In addition her individual conduct was either:

     i.    Her own conduct as a private individual, or

     ii.    representative conduct through her capacity as attorney, as conduct for which the City and NCPD defendants (or other clients) are potentially responsible. If Senn maintains that her individual conduct was undertaken on behalf of a client, and that client agrees, then this complaint will be amended to reflect the capacity of her tortious conduct. Only one recovery is sought for the defamation.

10.    Charleston County is a political subdivision of the state of South Carolina which is authorized to sue and be sued.

11.    The Court has personal jurisdiction over the parties to this action.

12.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(3), in that federal questions and matters involving civil rights and injunctive and declaratory relief as to civil rights are alleged.

13.    The Court has supplemental and pendent jurisdiction over the state law claims alleged.

14.    Venue in the Charleston Division of the federal court is proper under 28 U.S.C. § 1391(b)(1) and b(2), in that the action has been brought where the events occurred and in the state where the Defendants are citizens, and in the court division where the Defendants reside.

15.    This is an action under state and federal law for money damages, injunctive relief and equitable relief.  It is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the First, Fourth and Fourteenth Amendments to the Constitution of the United States, and under the South Carolina Constitution, laws and common law.  Among other things, injunctive relief is sought to compel the City to train its officers to comply with state and federal law, which training obligation the City presently deliberately ignores.

16.    The South Carolina Constitution (through Article 1 Section 10) affords a higher level of privacy protection than does the Fourth Amendment to the Constitution of the United States, resulting in higher privacy protections for the Plaintiff.

# Nature of Wrongdoing

17.    In April, 2009, Defendant McGowan was employed by the City of Charleston Police Department (referred to in this Complaint as CPD).  In that capacity,

Defendant McGowan made warrantless entry into a residence in Charleston.  The City of Charleston was sued for her conduct.

18.     Defendant McGowan has a special interest in DUI enforcement.  In 2010, Defendant McGowan was given an award for having made 66 arrests for DUI.  In this complaint, DUI refers to the criminal offense in the South Carolina Code of driving a motor vehicle under the influence of alcohol, drugs, or the combination of alcohol and drugs.

19.     In June, 2010, Jerome Taylor, presently Deputy Chief of CPD, recommended that Defendant McGowan be suspended for four days for, among other things, her warrantless entry into a Charleston residence.  Eventually Defendant McGowan was not suspended but was ordered to do additional training.  Defendant McGowan never got any additional training on warrantless entry, which the City knew or should have known.

20.     In August, 2010, Defendant McGowan was disciplined by the CPD for failing to properly document evidence incident to an arrest, which the City knew or should have known.

21.     In December, 2010, Defendant McGowan appeared at another officer's traffic stop and arrested a citizen she claimed had failed field sobriety tests when he had 0.0% blood alcohol, and (after she compelled a urine sample and a blood sample) no evidence of narcotics or other drugs in his bloodstream.  The City of Charleston was sued for her misconduct, which North Charleston knew or should have known.

22.     Also in December, 2010, Defendant McGowan retaliated against a citizen for that citizen having given what Defendant McGowan termed "attitude" over a speeding ticket.  The CPD found Defendant McGowan's behavior was "conduct

unbecoming" a police officer, and that her conduct had escalated the conflict in the interaction rather than de-escalate it, all of which North Charleston knew or should have known.

23.    On April 26, 2011, a civil lawsuit was filed over Defendant McGowan's warrantless entry to the Charleston residence.  McGowan was named as a defendant in that case, which North Charleston knew or should have known.

24.    In a job performance review of September 6, 2011, the CPD determined that Defendant McGowan was not able to work "without leadership."  CPD placed Defendant McGowan on probation until November 4, 2011, to closely observe her interactions with "commanders, NCOs, peers, and citizens," which North Charleston knew or should have known.

25.    At CPD Defendant McGowan had demonstrated she could not work "without leadership," or meet the CPD standards of behavior.

26.    Rather than serve under close supervision from September 6 to November 4, 2011, on September 20, 2011, Defendant McGowan applied to work at NCPD.

27.    At the time of her September 20, 2011 NCPD application, Defendant McGowan was also under investigation by CPD for calling in sick and later the same day celebrating her birthday with work colleagues at a West Ashley sports bar, which North Charleston knew or should have known.

28.    By 2011, Defendant McGowan had demonstrated she is willing to commit Constitutional violations, including warrantless entry, arrest on fabricated evidence, retaliatory conduct if a citizen gave her "attitude," and misrepresenting facts, which North Charleston knew or should have known.

29.     In her 2011 application to work at NCPD, Defendant McGowan observed that she had "special skills" involving DUI enforcement.  She affirmed that her application answers were "true and complete," but she did not disclose that CPD had been found her unable to work "without leadership," or that she was on probation for that deficiency, or that she had been professionally disciplined for various deficiencies, or that she was under investigation for her use of sick leave, or that her conduct was the subject of litigation.

30.     The City and NCPD knew, or should have known, of Defendant McGowan's demonstrated job weaknesses from her work with CPD.

31.     NCPD maintains an "early warning system for personnel," intended to identify police officers whose demonstrated job performance weaknesses present areas known to create potential for co-workers, the NCPD, or community members.  There are six identified criteria, each one of which creates early warning of a police officer with the potential for problems which might require "intervention."  Of those six criteria, Defendant McGowan had five of the six.  Any one is sufficient to create an early warning.

32.     On October 14, 2011, the City hired Defendant McGowan to work for NCPD as a police officer.  The hiring was approved by Mayor Keith Summey.  It was negligent by the City to hire McGowan.

33.     Based on its own criteria, the City knew or should have known that Defendant McGowan had demonstrated an inability to work "without leadership," and that among other job performance problems she had made warrantless entry, that warrantless entry was the subject of a lawsuit, that she had been recommended for more training due to her warrantless entry, that she had not gotten that training, that she was the

subject of multiple professional standards investigations, that her conduct had resulted in litigation, and that she had problems with vehicle use.

34.    The NCPD ignored it own warning sign criteria in hiring McGowan despite her demonstrated "early warning" job performance weaknesses.

35.    On November 29, 2011, Defendant McGowan appeared for a deposition in the lawsuit filed against her over her warrantless entry while with CPD.  A representative of Senn Legal, LLC attended that deposition and represented Defendant McGowan and the City.  The transcript reflects that the 2011 deposition began at 4:44 p.m. and concluded at 8:12 p.m.  In 2014, when McGowan was again deposed, Sandra J. Senn on behalf of Senn Legal, LLC, permitted Defendant McGowan to testify under oath, without correction, that she had never before been deposed.  The testimony by McGowan was false.  McGowan knew the testimony was false, and Sandra J. Senn knew or should have known that it was false.

36.    In February, 2012, the civil lawsuit over Defendant McGowan's CPD warrantless entry from 2009 was settled by the City of Charleston, which North Charleston knew or should have known.

37.    In June, 2012, Defendant McGowan was, with others, sued for making a false arrest for DUI when the individual arrested had a blood alcohol level of 0.0% and (according to SLED) had in his system no narcotics or other drugs, which North Charleston knew or should have known.

38.    Later in June, 2012, Defendant McGowan was disciplined by NCPD for a vehicle policy violation.

39.    In January, 2013, the false DUI arrest civil lawsuit brought concerning

Defendant McGowan's conduct was settled, which North Charleston knew or should have known.

40.     In February, 2013, Defendant McGowan resigned from NCPD effective March 15, 2013.

41.     Defendant McGowan thereafter moved to Florida and attempted to make a living working outside of law enforcement.

42.     Six months later, in September, 2013, Defendant McGowan re-applied to work for NCPD. Despite the "warning signs" of her demonstrated past performance weaknesses, lack of additional training to address those demonstrated weaknesses, and the history of litigation arising from her demonstrated job performance weaknesses, NCPD ignored its own warning signs and re-hired her, on recommendation of Chief Driggers and approval by Mayor Summey.

43.     The City was negligent in re-hiring McGowan.

44.     After hiring her, the City was negligent in supervising McGowan.

45.     Among other negligent acts, the City put McGowan on patrol without proper oversight. The City was deliberately indifferent to training McGowan so as to cause her to understand the Constitutional limits to her power as a police officer that she had repeatedly demonstrated she did not understand.

46.     On the evening of March 27, 2014, Defendant McGowan was on patrol for NCPD. She patrolled alone, without the adequate supervision she was known to need. Her shift that day began at 3 p.m. and ran until 1 a.m. on March 28.

47.     About 5 p.m. on March 27, at her home in North Charleston, the Plaintiff prepared dinner for her mother. Due to her dementia, her mother was unable to prepare

her own food.  The Plaintiff then left to attend a 6 p.m. work function, where she had job responsibilities.

48.    About 9:20 p.m., well past her usual bedtime, the Plaintiff returned home from that work function.  She checked on her mother, including whether she needed her adult diaper changed, then lay down on her bed to watch television programming on her laptop computer, using headphones to do so.  She fell asleep.

49.    About 10:00 p.m., the Plaintiff was awakened and recalled work items she had left in her car.  She went outside to retrieve the items from the car, and found the front door locked behind her.

50.    For about a minute the Plaintiff pounded on her own door and called to wake her mother for assistance.  Her mother heard her and came downstairs. The mother's dementia prevented her from being able to open the locked front door, but the Plaintiff directed her mother to the glass back door, so the Plaintiff could visibly direct her mother how to unlock that door. With her mother's help, the Plaintiff was back in her house shortly after going out to retrieve the items from her car.

51.    By 10:04 p.m., both the Plaintiff and her mother were back in their beds. The Plaintiff resumed watching a television show on her laptop with her headphones on. The Plaintiff again fell asleep.

52.    Unknown to the Plaintiff, one set of her neighbors had decided well before March 27 that the Plaintiff's mother should be in a nursing home cared for by strangers rather than living in her own home cared for by her daughter.

53.    The neighbors had reached their conclusions despite (a) it being none of their business, (b) the neighbors never offering to help, (c) that the mother's doctors were

satisfied with and monitored the mother's care, and (d) the oversight and satisfaction of the mother's family and her HCPOA.

54.    When the neighbors heard the Plaintiff calling her mother, they realized the Plaintiff was locked outside, and that it was their opportunity to disrupt the mother's care.

55.    The neighbor wife testified to hoping that the police would enter the house and question the Plaintiff.

56.    The neighbors call police frequently.  More than 20 times in the last two years the neighbors had spoken with police on various topics, including cats, dogs, wildlife, storm drains, and the Plaintiff.  In addition, the neighbors (it is now known), have gone through the Plaintiff's trash, and had entered the Plaintiff's house at various times without informing her, gathering information to try to use against the Plaintiff.

57.    After the Plaintiff was already back in her home with her mother's help, at 10:05 p.m., the neighbors called police.  They did not call 911, for help, because their objective was to cause trouble for the Plaintiff.  The call was placed by the neighbor husband.  He reported not fewer than five false things.

   i.    That the mother and daughter were in a "family dispute."

   ii.   That the plaintiff was "screaming."

   iii.  That the mother had locked the daughter out of the house.

   iv.   That the daughter was intoxicated.

   v.    That the incident was "occurring right now."

58.    The dispatcher assigned the call to Defendant Doxey, who had just begun his shift at 10:00 p.m..  The dispatcher categorized the call as a verbal disturbance and reported to officers on the radio that "there's a family argument."  No crime had been

reported.

59.    Defendant Wohlleb also decided to respond to the call.

60.    Defendants Doxey and Wohlleb were delayed at a train crossing, and Defendant McGowan, also responding to that call, arrived first on the scene.

61.    When Defendant McGowan arrived, at 10:14 p.m., everything was quiet at the scene.

62.    From 10:14 p.m. to the 10:30 arrival of Defendants Doxey and Wohlleb, McGowan was alone at the scene, which was quiet.  Without a warrant, without any crime having been reported, and without probable cause for believing any crime had been committed, McGowan explored the front and back yards of the Plaintiff's residence.  The back yard was fenced.  McGowan entered the fenced back yard to investigate.

63.    In the back yard McGowan claimed to have found what she would later describe to the court as a "purse covered with blood," among other things.  That claim was a fabrication, first by McGowan, seven months later joined by Wohlleb.

64.    McGowan claimed the item was "lying on the ground inside the gate" of the backyard and on the top surface of the "purse" as it lay, there was "a significant amount of blood" that she could see without touching the "purse."

65.    In her report, McGowan described the "purse" as green.  Later she described it as large enough to hold a laptop computer.

66.    McGowan contended that when she found the "purse covered with blood" it constituted an "exigent circumstance" that justified an emergency entry to the Plaintiff's residence for which no warrant was required.

67.    McGowan took no emergency action, despite her contention about the

"purse covered with blood."

68.     Instead, McGowan reported to dispatch, "It looks a little bit suspicious. There's a purse on the ground here and the whole trunk of the car is filled with bottles of wine.  I can't get anyone to come to the door, but there are lights on in the house. And it looks like there is blood on the purse."

69.     By stating that "the whole trunk of the car is filled with bottles of wine," McGowan would later testify that she meant that in the back of the Plaintiff's SUV there were five unopened bottles of wine.

70.     McGowan's next radio transmission stated, "Right now I can't find the victim.  There's just a purse with blood.  And maybe she's passed out inside, I don't know.  The hood of the car is still warm."

71.     The objective dispatch record of the incident indicates McGowan's radio transmission about "blood on the purse" occurred at 10:21 p.m.  McGowan took no emergency action at 10:21.

72.     Instead of emergency action, McGowan asked dispatch to arrange for her to speak directly with the neighbor who had called police.

73.     At what the objective dispatch record indicates occurred not later than 10:24 p.m., dispatch reported to McGowan, "I made contact with the male.  He should be coming out to talk to you.  He just advised that it looks like it's a disturbance between a mother who has dementia and a daughter.  Advised the daughter left to the left of the house.  The mother should be inside the residence sleeping on the couch in the living room.  But the complainant should be stepping out with you."  To which McGowan replied, "Copy.  Thank you."

74.     After 10:24 p.m., McGowan talked with the neighbor.  McGowan does not recall the content of the conversation with the neighbor.

75.     Neither does she recall how long the conversation lasted.

76.     During that conversation, the neighbor recalled no questions from McGowan about any item being "covered with blood."

77.     After that conversation, McGowan took no emergency action.

78.     McGowan waited until 10:30 p.m. for Defendants Doxey and Wohlleb to arrive.

79.     During her sixteen minutes alone at the scene, before Doxey and Wohlleb arrived, McGowan at no point spoke to a supervisor.

80.     Defendants Wohlleb and Doxey arrived at the scene about 10:30 p.m., about sixteen minutes after McGowan arrived at the scene.

81.     For about two minutes, the officers conferred at the scene.  At no point did any of the three officers call a supervisor.

82.     The City has been deliberately indifferent to training its officers to do call a supervisor before violating Constitutional provisions which protect citizens from police misconduct.

83.     When Defendants Wohlleb and Doxey arrived, Defendant McGowan explained that an emergency existed and warrantless entry was required immediately because of the "purse covered with blood."  This "emergency" was declared despite (a) her having taken no action for (by this time) more than 18 minutes, and (b) the "purse covered with blood" being a fabrication by McGowan, which seven months later Wohlleb would join.

84.    Defendant Wohlleb agreed with McGowan's assessment that an emergency existed and also claims to have seen the "purse covered with blood," even though the item McGowan described has never been "covered with blood." Defendant Doxey claims to have seen what was identified as the "purse" but testified he had not seen that it was "covered with blood." On behalf of all defendants, including Doxey, it was later represented to the court that the item was "covered with blood."

85.    McGowan and Wohlleb decided to make warrantless entry into the Plaintiff's residence through a back door. Doxey went to the front door of the residence and knocked.

86.    The objective dispatch record shows that at 10:32:48, Doxey reported to dispatch that he "has someone at the front door."

87.    The objective dispatch record shows that at 10:33:29, Doxey again reported to dispatch that he had made "contact at the front."

88.    Despite Doxey having made contact at the front door, McGowan and Wohlleb broke into the back door, and at 10:33:37, 49 seconds after Doxey reported making contact at the front door, Wohlleb reported he had "made contact," referring to his encountering the Plaintiff's mother after he and McGowan had made warrantless entry by breaking into the back of the house.

89.    The warrantless entry by McGowan and Wohlleb was unjustified, and violated the Plaintiff's Constitutional rights. McGowan and Wohlleb were each armed when they broke into the Plaintiff's house.

90.    Shortly thereafter, Doxey also made warrantless entry; when he did so, he was armed.

91.    The warrantless entry by Doxey was unjustified, and violated the Plaintiff's Constitutional rights.

92.    Each warrantless entry was made under color of state law on behalf of the City.  Each warrantless entry constituted armed burglary.

93.    Defendants McGowan and Wohlleb fabricated the "evidence" which supposedly compelled their warrantless entry based on an "emergency."

94.    McGowan took no action on the supposed "emergency" for more than 18 minutes.

95.    Each of McGowan, Wohlleb, and Doxey had in his possession a cell phone capable of taking a picture or video. None of them took a photograph of the supposed blood-stained bag.  No photograph was possible, because the bag was falsely described as "covered with blood," and a photograph would have revealed no blood on the item.

96.    Nor did any of McGowan, Wohlleb, or Doxey comply with policies of NCPD for collecting evidence of their justification for warrantless entry.  Their only "record" is their claim that an item existed, when in fact the item as described did not exist.

97.    The City has been deliberately indifferent to requiring standards which actually require evidence of its officers, not merely a claim by officers that they had evidence.  The City policy and practice allows officers to fabricate evidence, provided they do so at the scene and in their incident report.

98.    Each officer demonstrated incompetence in failing to secure evidence by which they could meet their burden to justify warrantless entry.

99.    No objectively reasonable basis existed to contend that any "emergency"

was present on March 27, 2014 at the Plaintiff's residence.

100.   No objectively reasonable basis existed for the warrantless entry made by McGowan, Wohlleb, or Doxey which violated the Plaintiff's federal Constitutional rights under the Fourth and Fourteenth Amendment protections against unreasonable searches and seizures, and her privacy right under the First Amendment.  Her privacy and search protections from Article 1 Section 10 of the South Carolina Constitution were also violated.

101.   The Defendants have no objective evidence with which to sustain their burden to show that presumptively unreasonable warrantless entry was needed.  Defendant Doxey has no evidence whatever.  Defendants Wohlleb and McGowan have only their subjective, and fabricated, claim that they saw, and had, a "purse covered with blood."

102.   By his own account, Defendant Doxey had no basis whatever to justify his having made warrantless entry.

103.   The physical entry of a home by police acting without a warrant is the chief evil against which the wording of the Fourth Amendment is directed, according to the United States Court of Appeals for the Fourth Circuit.

104.   The City has been negligent under state law in supervising its officers.

105.   The City has been deliberately indifferent under federal law for not training its officers to comply with the First, Fourth and Fourteenth Amendments and the proper basis before making warrantless entry, for not training its officers to preserve objective evidence to support warrantless entry, and for not training its officers that any officer making warrantless entry is presumed to have acted unreasonably and needs objective

evidence of a substantial justification for doing so.

106.    Once inside the Plaintiff's residence without a warrant, the Defendants Wohlleb and McGowan encountered the Plaintiff's mother.  As testified to by Wohlleb, the officers could see she did not require medical care.  He testified the Plaintiff's mother assured them everything was "okay" and that the Plaintiff was upstairs, asleep in her bedroom.

107.    At that point the Defendants should have withdrawn.  Any possible basis for an emergency warrantless entry, even if warrantless entry had been proper and its justification not based on a fabrication, was satisfied.  The supposed justification, had it not been fabricated, was that a medical emergency involving significant bleeding may have existed in the residence.

108.    Defendants did not withdraw, and at that point, each of Defendants McGowan, Wohlleb, and Doxey became trespassers in the Plaintiff's home.

109.    Defendant McGowan further trespassed into the Plaintiff's bedroom, in the dark, woke her, and with a flashlight in her face demanded to know if the Plaintiff needed medical care and demanded to know how much she had had to drink.

110.    Defendant McGowan, on no basis whatsoever, had already fabricated additional "facts," and had decided (incorrectly), as she testified, that the Plaintiff was "beyond drunk and she drove to the house."  Defendant McGowan trespassed into the Plaintiff's home under color of state law to investigate a crime Defendant McGowan had already determined (on no proper basis and without probable cause) had supposedly been committed, and she and ther officers made warrantless entry to perform that investigation, falsely claiming an "emergency" as a pretext for the investigation Defendant McGowan desired to make.

18

111.   The NCPD Defendants acted in flagrant violation of the Constitutional provisions which protect the Plaintiff's civil rights.

112.   Defendant McGowan demonstrated extraordinary incompetence and dishonesty as a police officer in doing so.

113.   The City tolerates dishonesty and incompetence in its police officers.

114.   In response to McGowan's demand to know if the Plaintiff needed medical care, according to McGowan, the Plaintiff denied that she needed medical care.

115.   According to her own testimony, McGowan did not withdraw after the Plaintiff denied she needed medical care.  At that point, if not before, McGowan became an armed trespasser in the Plaintiff's bedroom.

116.   McGowan remained in the Plaintiff's bedroom.

117.   McGowan then isolated herself with the Plaintiff by directing Wohlleb and Doxey to go outside and leave Defendant McGowan with the Plaintiff so she could interrogate the Plaintiff to the extent she desired about the Plaintiff's drinking, to pursue her pre-formed (and unsupported) conclusion that the Plaintiff had committed a DUI offense.

118.   Plaintiff denied the offer of medical care, demanded to know who McGowan was, and began demanding that McGowan get out of her house.

119.   As noted above, Defendant McGowan does not tolerate when a citizen gives her "attitude."

120.   When Defendant McGowan failed to get from the Plaintiff the admission she aspired to get, and found herself (a) a trespasser in the Plaintiff's home, (b) after having violated the First, Fourth and Fourteenth Amendments to the United States

Constitution, and (c) provisions of the South Carolina Constitution, by (d) falsifying an "emergency" which she claimed justified warrantless entry to get into the Plaintiff's bedroom to confront her, and (d) persisting in her warrantless and unjustified intrusion past the mother's assurance that everything was "okay" in the house, and (e) persisted past the Plaintiff's refusal of medical care, and (f) persisted past the Plaintiff's demand that Defendant McGowan leave her home, Defendant McGowan realized she needed to try to justify her extraordinary violation of the Plaintiff's civil rights.

121.    McGowan assaulted the Plaintiff, using excessive force against her, inflicting what would be documented as a head injury and substantial bruising from that assault.

122.    McGowan then falsely charged the Plaintiff with assault on a police officer.

123.    By Monday, March 31, McGowan changed the charge against the Plaintiff to simple assault.

124.    McGowan's charges against the Plaintiff was *nolle prossed.*

125.    McGowan's *nol prossed* charges against the Plaintiff have been expunged.

126.    The Plaintiff denies making any assault on Defendant McGowan, but since McGowan was a trespasser, the Plaintiff would have been justified in using force to repel Defendant McGowan even if it was not yet another fabrication by Defendant McGowan.

127.    Defendant McGowan claimed no injuries from the assault she claimed.

128.    Defendant McGowan then wrongfully abducted the Plaintiff, and deprived her of her liberty, pursuant to the now expunged charges, and caused her to be falsely imprisoned.

129.    For more than 14 hours the Plaintiff was denied access to a telephone and,

because she insisted on her right to be represented by counsel, was unconstitutionally disciplined with excessive force, including being strangled while handcuffed and a taser used against the Plaintiff after she was entirely restrained but for her right arm. Those actions are the subject of a previously filed complaint.

130.    Each of the improper actions taken against the Plaintiff after her unlawful abduction and false imprisonment by Defendant McGowan were foreseeable to Defendants McGowan and the City.

131.    The City deliberately fails to train NCPD officers to comply with state and federal law. Specifically, the City fails to train officers to comply with the requirements for warrantless entry, the limits of warrantless entry, how to preserve objective evidence to justify warrantless entry, that the U.S. Supreme Court established in 1989 that failure of an officer to act to prevent private harm is generally not actionable, that the South Carolina Tort Claims Act excludes liability for failure of an officer to act to prevent private harm, and fails to train officers against fabricating evidence to claim a basis for warrantless entry.

132.    The City deliberately failed to re-train McGowan after her demonstrated job performance weaknesses, including her prior warrantless entry, and failed to provide her the level of supervision she had demonstrated she required.

133.    After having made improper warrantless entry, conduct by Defendants McGowan and Wohlleb within the Plaintiff's residence independently violated state and federal laws, and the Plaintiff's Constitutional rights, in (a) trespassing into the Plaintiff's home, (b) failing to terminate the warrantless entry at each of two independent points when the fabricated "purpose" of the warrantless entry had been satisfied, (c) assaulting the Plaintiff while she was in her bed, (d) using excessive force when McGowan

assaulted the Plaintiff, and (e) unlawful abduction and false imprisonment of the Plaintiff by McGowan.

134.    Defendant McGowan arranged for Defendant Kouris to transport the Plaintiff to the jail for her unlawful abduction and false imprisonment.  In the course of doing so, Kouris engaged in sexually inappropriate behavior with the plaintiff while shackling her for transport, including improper touching of the plaintiff and positioning himself to demean and objectify the Plaintiff by looking up the skirt the Plaintiff was wearing at the time of her unlawful abduction.

135.    Kouris remained at the place of Jane Doe's confinement for some time after delivering her there, to enjoy the show of the Plaintiff being taunted, and retaliated against, by other persons under color of state law for demanding her rights.

136.    Defendants McGowan and Kouris defamed the Plaintiff by spreading at the jail the false information that the Plaintiff had been wrongfully deprived of her liberty by abduction because she had committed the felony of abusing her mother.

137.    As noted, the Plaintiff was deprived of her right to counsel during her abduction and false imprisonment and, because she demanded those rights, had excessive force used against her at the jail, all of which was foreseeable to McGowan and intended by the City and the NCPD defendants.  For more than 14 hours during her abduction the Plaintiff was deprived of access to make a phone call.  Her wrongful abduction and false imprisonment did not end until about 4 p.m. on March 28.

138.    During the course of the Plaintiff's abduction and false imprisonment, the mother was left alone by the agents of the City, despite the medical condition that prevented her from feeding herself, toileting herself, or otherwise caring for herself, all of which these Defendants (including the Senn Defendants) contend the City and NCPD

defendants were entitled to do.

139.    In 2014, the mother, through those who hold her power of attorney, brought suit against the City and the NCPD defendants, and mothers, for the improper and unconstitutional conduct directed at her, and (among other things) the hospitalization the mother underwent as a result.

140.    In 2014, the City and the NCPD Defendants McGowan, Wohlleb, Doxey, and Kouris, hired Sandra J. Senn of Senn Legal, LLC to represent them in the action brought on behalf of the mother.

141.    After retaining the Senn defendants, the City and NCPD Defendants began a series of retaliatory acts against the mother and this Plaintiff.  Possibly as an extension of those retaliatory actions, meaning acting either within that representation, or acting independently for her own purposes and outside the scope of her representation, Sandra J. Senn adopted a course of conduct to, among other things, defame to third parties, in writing, the mother and the Plaintiff.

142.    Alternatively, the Senn Defendants acted on their own behalf.

143.    As to this Plaintiff, the Senn Defendants falsely accused the Plaintiff of criminal acts, falsely denied the Constitutional abuses Plaintiff sustained during her unlawful abduction and false imprisonment, generally disparaged the Plaintiff, and did so to third persons, in writing.  Additionally, the Senn Defendants permitted McGowan and other witnesses to give false testimony in depositions.

**For a First Cause of Action:**
**Deprivation of Civil Rights**
(Injunctive relief against the City of North Charleston)

144.    Allegations above are incorporated into this claim as if fully stated.

145.     This cause of action is made pursuant to 42 U.S.C. § 1983 and is directed against the City for injunctive relief.

146.     The City has failed to train its officers on Constitutional rights, the prohibitions against warrantless entry, the justification needed for warrantless entry, the proper standard for preserving evidence to justify warrantless entry (which is presumed to constitute an unreasonable search), when to call a supervisor, when to terminate a warrantless entry, the point at which an officer becomes a trespasser, limits on investigation tactics so as to exclude fabricating "emergency" conditions, and how to take and how to preserve a photograph of evidence.  None of McGowan, Wohlleb, Doxey was capable of any of those skills on March 27, 2014.

147.     The City has failed to train its officers on the prohibitions against police power used for wrongful abduction, false imprisonment, sexual misconduct towards those abducted, and defamation of those wrongfully abducted and falsely imprisoned. Neither McGowan or Kouris was capable of any of those skills on March 27, 2014.

148.     The City's officers acted under color of state law, and pursuant to City policy, in affirmatively acting so as to violate the Plaintiff's Constitutional rights.

149.     The Plaintiff is a citizen and resident of South Carolina.

150.     The Plaintiff has substantive Due Process rights under the United States Constitution to (a) her bodily integrity, (b) her personal security, (c) protections from unreasonable searches and seizures, (d) protections from wrongful abduction, (e) protections from false imprisonment, (f) protections from state sponsored defamation, (g) protections from the government creating for her dangers and harm, and (h) unlawful surveillance.

151.     Under the First, Fourth and Fourteenth Amendments, the Plaintiff had a reasonable expectation of privacy while she was within her residence.

152.     By 2014 those Constitutional protections for the Plaintiff were clearly established.

153.     The City has inadequate procedures and training sufficient to compel its police officers to protect civil rights, specifically privacy and search and seizure protections, and should be enjoined from failing to develop adequate training and procedures sufficient for that purpose.

154.     The NCPD has a custom or policy that permits or requires its police officers to violate civil rights, in that it trains them that they must make warrantless entry (a) on speculation, (b) to prevent private harm, (c) using procedures for evidence collection that permit fabricated grounds for warrantless entry, and (d) that once having made warrantless entry there are no limits to an officer's conduct; additionally, the City has a policy to not trains its officers (e) in what constitutes trespass, (f) in what constitutes wrongful abduction, (g) in what constitutes excessive force, (h) in what constitutes false imprisonment, (i) in what does, and does not, constitute a proper basis for DUI enforcement, and (j) in not defaming persons arrested by providing falsereasons for arrest.

155.     The City's custom or policy deprived the Plaintiff of the rights, privileges, or immunities secured to her by the Constitution and laws of the United States as well as of South Carolina, and subjected her to injuries which she would otherwise have avoided.

156.     Unless enjoined, the City will continue to fund and operate its police department in a manner which deprives persons such as the Plaintiff of constitutionally protected rights.

157.    Jane Doe is entitled to injunctive relief sufficient to prevent the City from failing to provide funds sufficient to train and operate its police force so as to protect citizens from warrantless entry on fabricated grounds used as a pretext for investigation, and from failing to adopt policies and practices which effectively protect Constitutional rights, as opposed to the present policies which do not.

**For a Second Cause of Action:**
**Deprivation of Rights Under 42 USC §§ 1981 and 1983: Three Counts**
(Against Defendants McGowan, Wholleb,
and Doxey, individually)

158.    Allegations above are incorporated into this claim as if fully stated.

159.    Defendants McGowan, Wholleb, and Doxey, in this cause of action sued in their individual capacities, made warrantless entry to the home of Jane Doe, and did so improperly, by fabricating evidence of a supposed "emergency" as a pretext for investigation.

160.    The Defendants failed to curtail their warrantless entry when its purpose had been satisfied by Jane Doe's mother assuring officers that everything in the house was fine.  When that assurance was ignored, it constituted an independent violation of Jane Doe's 4th Amendment rights.

161.    McGowan then failed to curtail her warrantless entry a second time when she persisted in investigating Jane Doe after Jane Doe had herself refused medical care, an independent violation of Jane Doe's 4th Amendment rights.

162.    After Jane Doe demanded that McGowan leave her house, and McGowan refused, it constituted a fourth, independent violation of Jane Doe's 4th Amendment rights.

163.    At each of those independent points, Defendants violated the civil rights of Jane Doe protected under the Fourth and Fourteenth Amendments.

164.    Jane Doe is entitled to actual and punitive damages in amounts to be established by the finder of fact for each of the violations of the Defendants.

**For a Third Cause of Action:**
**Trespass under state law: ten occurrences**
(Against the City)

165.    Allegations above are incorporated into this claim as if fully stated.

166.    In this cause of action under state law, the conduct of defendants McGowan, Wohlleb, and Doxey are regarded as actions of the City as its agents and employees.

167.    Defendants McGowan , Wholleb, and Doxey, by fabricating grounds to justify warrantless entry into the home of Jane Doe entered as trespassers, each constituting an occurrence of trespass for three occurrences of trespass.

168.    After encountering Jane Doe's mother, who told them that there was no medical emergency, each of the Defendants at that point failed to cease the warrantless entry and committed three new acts of trespass, one by each, constituting three additional occurrences of trespass for six occurrences of trespass.

169.    Defendants McGowan and Wohlleb then committed two additional occurrences of trespass by continuing further into Jane Doe's home by entering the second floor of the home, and Jane Doe's bedroom, without justification, constituting eight occurrences of trespass.

170.    Defendant McGowan then persisted in investigating Jane Doe after she had refused medical care, constituting a ninth occurrence of trespass.

171.    Defendant McGowan then refused to withdraw after Jane Doe demanded that McGowan leave her bedroom, constituting a tenth occurrence of trespass, and an occurrence of trespass after notice.

172.    Jane Doe is entitled to damages as allowed by law for each of the occurrences of trespass committed against her and her property and individual rights.

**For a Fourth Cause of Action:**
**Invasion of Privacy under state law (five occurrences) and**
**Deprivation of Rights Under 42 USC §§ 1981 and 1983 (five counts)**
(Against Defendants the City, McGowan, Doxey and Wohlleb)

173.    Allegations above are incorporated into this claim as if fully stated.

174.    In this cause of action, McGowan, Wohlleb, and Doxey are sued individually under federal law and the City is sued under state law for the conduct of McGowan, Wohlleb, and Doxey.

175.    Jane Doe has a reasonable expectation of privacy in her home under each of state and federal law.

176.    Jane Doe has a reasonable expectation of privacy in her bedroom under each of state and federal law.

177.    Defendants McGowan Wohlleb and Doxey violated the Plaintiff's privacy in two different ways on two different occurrences.  First, all three of them entered the Plintiff's residence without legal justification, constituting three occurrences of invading her privacy.  Second, after encountering the mother and failing to withdraw after the mother told them there was no "emergency," McGowan and Wohlleb did not withdraw and instead invaded further into the Plaintiff's privacy, and further into her home, with no justification.

178.    Wohlleb invaded to the second floor of the residence to where he could see into Jane Doe's bedroom.  McGowan invaded to the second floor and into the

28

Plaintiff's bedroom, ignoring all proper limitations on police conduct.  Under state law, each of those further invasions constitute separate breaches of the privacy rights of Jane Doe being violated.  Under federal law, each of those further invasions violated Jane Doe's rights under the First, Fourth, and Fourteenth amendments.

179.    Jane Doe has a privacy interest protected by the First Amendment of the United States Constitution as well as by state law and the S.C. Constitution in Article 1 Section 10.

180.    Each of the five privacy invasions are actionable under state law against the City, because under state law the City is responsible for the conduct of its officers. Each of the five privacy invasions are actionable under federal law against McGowan, Wohlleb and Doxey individually, for violations of the Plaintiff's First Amendment privacy rights.

181.    Jane Doe is entitled to damages as allowed by state law against the City for each of the five occurrences of the Defendants' privacy invasions.

182.    Jane Doe is entitled to actual and punitive damages as allowed by federal law against McGowan, Wohlleb, and Doxey for each of the five invasions of the Plaintiff's privacy rights.

**For a Fifth Cause of Action:**
**Negligent Hiring (two occurrences)**
(Against Defendant the City of North Charleston)

183.    Allegations above are incorporated into this claim as if fully stated.

184.    The City was negligent in hiring Defendant McGowan, in each of 2011 and 2013.  The City knew or should have known before hiring her each time that she created an undue risk of harm to the public for having demonstrated various levels of incompetence and conscious disregard for Constitutional rights and dishonesty.

185.   In 2013 there were even more indicators of those problems than there had been in 2011.  Each time the City was negligent in hiring McGowan.

186.   Various sources about which the City knew or should have known indicated that McGowan was a danger to the public.  In 2011, her job performance as assessed by CPD, the determination that she needed additional training as to warrantless entry, her failure to get that training, her history of retaliation for citizen "attitude," her history of arrest on fabricated evidence, and her leaving CPD while on probationary status each constituted an occurrence of negligence by the City in hiring McGowan.

187.   By 2013 those indicators had only increased in number and specificity. In 2013, each of those events, the City's own experience with McGowan, and the various lawsuits which by 2013 had been filed against McGowan were indicators that the City was negligent a second time in hiring McGowan and ignoring her demonstrated weaknesses and lack of integrity.

188.   Keith Summey is personally responsible for hiring McGowan in 2011 and 2013.  Keith Summer was personally negligent in doing so.  In 2013, Chief Driggers was personally negligent in recommending McGowan for re-hire.

189.   The City committed an occurrence of negligence as to the 2011 hiring and the 2013 re-hiring of McGowan.

190.   It was foreseeable to the City that McGowan would fabricate evidence, retaliate for "attitude," and violate Constitutional rights.  Before 2014, she had a history of job under-performance that included a demonstrated willingness to do each.

191.   The City is liable to the Plaintiff for actual damages under state law for each of its multiple occurrences of negligent hiring of McGowan.

**For a Sixth Cause of Action:**
**Negligent Supervision**
(Against Defendant the City of North Charleston)

192.   Allegations above are incorporated into this claim as if fully stated.

193.   The City was negligent in supervising Defendant McGowan.

194.   The City has a special relationship with its citizens, including the Plaintiff, and is obligated to protect the civil rights of its citizens.

195.   The City has a special relationship with its offices, including McGowan, and has an obligation to screen, hire, train, and supervise its employees so as to educate them on not causing harm to third persons, including Jane Doe.

196.   In addition, the City voluntarily undertook a duty to its citizens, including the Plaintiff, to adequately train and supervise Defendant McGowan so as to remedy her demonstrated job performance weaknesses and protect its residents from McGowan violating their civil rights.

197.   The City engaged in multiple occurrences of neglect that created a risk to its citizens, including the Plaintiff, in failing to supervise McGowan against the demonstrated job performance weaknesses and unconstitutional behaviors which the City knew or should have known she had exhibited, and would again exhibit, if not properly supervised.

198.   In causing her damage to the Plaintiff and her rights, McGowan used the chattels of her employer and was acting within the course and scope of the duties that the City had hired her to do.  The City knew, or should have known, that McGowan had disregarded Constitutional rights in the past, had fabricated evidence in the past, had in the past retaliated against a citizen for "attitude," and had been dishonest.

199.  The City knew or had reason to know that it had the ability to control McGowan, and had the necessity and opportunity for exercising such control because the City knew or should have known of other incidents of inappropriate behavior by McGowan, and that she lacked the judgment to act without close supervision.

200.  Specifically, the City enabled McGowan to patrol alone, without supervision.  The City failed to require McGowan to get the additional training on warrantless entry she had been ordered to get by CPD.  The City filed to require McGowan to consult a supervisor before she again made warrantless entry.

201.  For example, during her tenure with NCPD, McGowan has issued multiple citations for assault on a police officer, any one of which the City regards as a warning sign of an officer in need of intervention.  The City failed to properly adjust McGowan's supervision either from her past conduct or as she accumulated warning signs that she required increased intervention.

202.  The City is liable to the Plaintiff for actual damages under state law for each of its multiple occurrences of negligent supervision of McGowan.

**For a Seventh Cause of Action:**
**Negligent Retention**
(Against Defendant the City of North Charleston)

203.  Allegations above are incorporated into this claim as if fully stated.

204.  The City was negligent in retaining Defendant McGowan after hiring her in 2013.

205.  The City knew or should have known that McGowan had demonstrated a history of misconduct in ways that made her dangerous to the Plaintiff and continue to make her dangerous to every other citizen.

206.   After re-hiring her in 2013, the City retained McGowan without mandating she receie the additional training to remedy her repeatedly demonstrated dangerous propensities.  The City was fully on notice of the dangerous propensities McGowan had demonstrated.

207.   The City knew or should have known of McGowan's demonstrated history of misconduct as a police officer.

208.   In each of 2012, 2013, 2014, and to this day, the City was negligent in supervising McGowan, as alleged above.

209.   The City was deliberately indifferent to (a) whether McGowan had falsified evidence in 2014 and earlier, (b) whether McGowan had made warrantless entry to more than one residence (including the Plaintiff's), (c) whether McGowan had retaliated against persons (including the Plaintiff) for "attitude," (d) had trespassed into the Plaintiff's residence, (e) had used excessive force against the Plaintiff, (f) had wrongfully abducted the Plaintiff, (g) had wrongfully abandoned the Plaintiff's mother, and (h) had falsely imprisoned the Plaintiff, among other offenses.

210.   Even after the Plaintiff's mother had brought suit against the City and McGowan (and others) for misconduct in 2014, the City made no review of McGowan's past misconduct, made no review of the warrantless entry to the Plaintiff's home, made no review of the evidence against McGowan (or Wohlleb) for fabricating evidence, made no review of the allegations, and did nothing to reassign McGowan to another part of the City to assure she would not again encounter the Plaintiff.  Instead, the City joined McGowan in engaging in retaliatory actions against the Plaintiff.

211.   The City is liable to the Plaintiff for actual damages under state law for each of its multiple occurrences of negligent retention of McGowan.

**For an Eighth Cause of Action:**
**Assault under state law**
(Against the City)

212.     Allegations above are incorporated into this claim as if fully stated.

213.     Defendant McGowan trespassed into the Plaintiff's residence, acting without legal justification.  In the capacity of a trespasser, she invaded Jane Doe's home and assaulted the Plaintiff.  McGowan approached Jane Doe in the dark, woke her with a flashlight in her face, in her bedroom, without identifying herself as a police officer, to make investigatory demands of Jane Doe.  Jane Doe was placed in reasonable fear of bodily harm by the conduct of McGowan, an agent of the City.

214.     Jane Doe is entitled to damages as allowed by law against the City which under state law is responsible for Defendant McGowan's assault


**For a Ninth Cause of Action:**
**Battery under state law and**
**Deprivation of Rights Under 42 USC §§ 1981 and 1983: Excessive Force**
(Against The City and Defendant McGowan)

215.     Allegations above are incorporated into this claim as if fully stated.

216.     Defendant McGowan trespassed into the Plaintiff's residence, acting without legal justification, and battered the Plaintiff, inflicting a head injury and considerable bodily injury on Jane Doe.  Those injuries were documented by a hospital emergency room and through photographs.

217.     McGowan's battery of Jane Doe constituted excessive force under the circumstances.   (a) No force whatever was authorized, and (b) the force used was excessive.  Excessive force was applied by McGowan as a way to try to justify her improper warrantless entry with a false criminal charge and to divert the Plaintiff by intimidation from challenging McGowan's warrantless entry.

218.    Jane Doe is entitled to damages as allowed by law for Defendant McGowan's having battered Jane Doe, both under state law against the City, and under federal law (the Fourth and Fourteenth Amendments) for actual and punitive damages against McGowan for the constitutional rights of the Plaintiff that were infringed by McGowan's use of Excessive Force.

### For a Tenth Cause of Action:
### False Imprisonment under state law
### Deprivation of Rights Under 42 USC §§ 1981 and 1983
(Against the City and Defendants McGowan, Wohlleb and Kouris)

219.    Allegations above are incorporated into this claim as if fully stated.

220.    In this cause of action the City is sued under state law for the conduct of McGowan, Wohlleb and Kouris, and the Defendant officers are sued individually under federal law.

221.    Defendants McGowan, Wohlleb, and Kouris falsely imprisoned Jane Doe, did so without legal authority, for improper purposes and by improper techniques including warrantless entry to her residence, unjustified entry to her bedroom,a nd improper investigatory questioning of her after she had denied medical care and ordered McGowan to leave her home.  McGowan issued a false citation and effectuated Jane Doe's arrest.  Wohlleb assisted in effectuating the arrest.  Kouris falsely imprisoned her and transported her to the jail for unlawful detention.

222.    As a result of the improper actions by the defendants, Jane Doe's liberty was restrained in March, 2014.

223.    The actions undertaken to restrain the Plaintiff's liberty were done intentionally by each defendant.

224.    Jane Doe's restraint itself was not lawful, and her restraint caused her substantial tangible and intangible injuries.

225.     Jane Doe was damaged by the unlawful restraint on her liberty, and she is entitled to actual and punitive damages under federal law against McGowan, Wohlleb, and Kouris in amounts to be established by the finder of fact for the restraint on her Fourth and Fourteenth Amendment rights.

226.     Jane Doe is entitled to damages as allowed by law against each of Defendants McGowan, Wohlleb and Kouris having cooperated to falsely imprison Jane Doe, and under state law against the City.  Her federal claims entitle her to actual and punitive damages against each of McGowan, Wohlleb and Kouris for the constitutional rights of the Plaintiff that were infringed by the conduct.

**For an Eleventh Cause of Action:**
**Deprivation of Rights Under 42 USC §§ 1981 and 1983 for Retaliatory Conduct**
(Against the City and Defendants McGowan, Wohlleb and Kouris)

227.     Allegations above are incorporated into this claim as if fully stated.

228.     The Senn Defendants joined these defendants in retaliatory actions against Jane Doe after her mother filed suit in 2014.  The retaliatory efforts were intended to intimidate Jane Doe from brining this case.  As explained by the Senn Defendants, the defendants had done what they could to "shake" Jane Doe.

229.     Sandra J. Senn acted on behalf of Senn Legal, LLC, and either individually or on behalf of one or more clients in retaliating against Jane Doe.  To the extent she acted on behalf of one or more clients, Sandra J. Senn acted under color of state law on behalf of one or more state actor clients, and her conduct is ascribed to her state actor clients.  Otherwise, she acted individually, motivated by her own animus, as a private person, not under color of state law.

230.     The retaliatory acts were intended to intimidate Jane Doe from bringing her own suit against the City and the individuals named in this action, infringing her First, Fourth, and Fourteenth Amendment rights.

231.     Retaliatory activities included, among other things, having an officer trail the Plaintiff and threaten her; unauthorized surveillance of the Plaintiff and her residence, coordinated by the Senn Defendants; sending agents to enter the Plaintiff's property to empty and photograph her trash and her recycling bin; shining bright lights into her residence at night; publicly attacking the Plaintiff; identifying the Plaintiff's mother in public filings despite and order which protected her mother's identity from the public record; defaming the Plaintiff to third persons as a liar and as "crazy;" discarding evidence helpful to the Plaintiff while preserving evidence for the purpose of distorting it to harm her; coordinating their stories to fabricate evidence; and defaming Jane Doe by both spreading at the jail that Jane Doe's mother had had her arrested and that Jane Doe had abused her mother, and by publishing writings defamatory of Jane Doe.

232.     Jane Doe is entitled to actual and punitive damages under federal law against the state actor defendants and under state law against Senn Legal, LLC and any persons not acting under color of state law.

### For a Twelfth Cause of Action:
### Defamation
(Against the City for conduct by McGowan and Kouris)

233.     Allegations above are incorporated into this claim as if fully stated.

234.     McGowan, or Kouris, or each of them, disseminated at the county jail the false information that Jane Doe had abused her mother and that her mother had had her arrested.  That dissemination constituted publication.  Jane Doe was taunted by jail deputies on each false basis.  In doing so, McGowan and Kouris acted either on behalf of

the City, or individually, to falsely accuse Jane Doe of a crime.  The information is

defamatory *per se* and actionable *per se*.  Common law malice and damages are

presumed.

235.    Jane Doe suffered harm from the false statements.

236.    Jane Doe is entitled to actual and punitive damages against the City for

intentional and defamatory conduct.

### For a Thirteenth Cause of Action:
### Payment for Infringed Rights
(Against Charleston County)

237.    Allegations above are incorporated into this claim as if fully stated.

238.    As set out above, due to no fault or negligence of her own, Jane Doe was

hindered, prevented, and obstructed in the exercise of the rights and privileges secured to

her by the Constitution and laws of the United States and of South Carolina.

239.    S.C. Code Section 16-5-60 states:

> Any citizen who shall be hindered, prevented or obstructed in the exercise
> of the rights and privileges secured to him by the Constitution and laws of
> the United States or by the Constitution and laws of this State or shall be
> injured in his person or property because of his exercise of the same may
> claim and prosecute the county in which the offense shall be committed
> for any damages he shall sustain thereby, and the county shall be
> responsible for the payment of such damages as the court may award,
> which shall be paid by the county treasurer of such county on a warrant
> drawn by the governing body thereof. Such warrant shall be drawn by the
> governing body as soon as a certified copy of the judgment roll is
> delivered to them for file in their office.

240.    In the event any verdict for Jane Doe exceeds either coverage or any limit

imposed by statute, a claim is made against Charleston County to reimburse Jane Doe

pursuant to state law for actual and punitive damages for any violation found.

241.    By S.C. Code § 16-5-60, Charleston County owes Jane Doe a duty to

respond to the infringement of her rights, and is "responsible for the payment of such

damages as the court may award," for that infringement.

**For a Fourteenth Cause of Action:**
**Deprivation of Rights Under 42 USC §§ 1981 and 1983**
(Against the City for policy and practice)

242.    Allegations above are incorporated into this claim as if fully stated.

243.    The City has policies, practices, and customs that permit officers to not preserve evidence to substantiate the emergency exception to support warrantless entry. Policy O-04 on searches purports to require an officer to "be prepared to justify their actions by supporting a reasonable belief that an emergency existed" to support an exigent circumstances warrantless entry, but the City's practice enables an officer to "support" a belief not by collecting substantive objective evidence but merely claiming that such evidence at one time existed in the subjective impression of the officer.

244.    The City's policy, practice, and custom encourages officers to falsify evidence, and is deliberately indifferent to an officer who falsifies evidence. The City does nothing to ascertain if officers have falsified evidence, even after allegations that officers lacked proper justification for warrantless entry. The City directly inflicted the injury to Jane Doe by its custom and policy, and placed at risk all constitutional protections against unreasonable searches and seizures through warrantless entry.

245.    The City is liable to Jane Doe for actual and punitive damages under federal law for the warrantless entry of its officers, which was caused by the official policy or custom of the City to disregard the need for objective evidence to justify a warrantless entry made on a claimed emergency. The City failed to require officers document an actual emergency, as required by law.

**For a Fifteenth Cause of Action:**
**Defamation**
(Against Sandra J. Senn and Senn Legal LLC or, alternatively,
against Senn Legal LLC, the City, McGowan, Wohlleb, Doxey, and Kouris)

39

246.    Allegations above are incorporated into this claim as if fully stated.

247.    In late July, 2014, those holding power of attorney for Jane Doe's mother filed a circuit court complaint against the City of North Charleston and various police officers.  At some point thereafter, the City and its officers hired Sandra J. Senn of Senn Legal, LLC to represent them.  Sandra J. Senn works for Senn Legal LLC, and at all times acted for Senn Legal LLC, which in addition to her personal liability is independently responsible for her conduct.

248.    Acting either in her representative capacity, in which case the actions of Sandra J. Senn are ascribed to Senn Legal LLC and to her clients (the City, McGowan, Wohlleb, Doxey, and Kouris, or other clients), or acting on behalf of herself and Senn Legal LLC, Sandra J. Senn committed tortious acts which damaged Jane Doe.

249.    Senn Legal LLC has a duty to supervise the conduct of Sandra J. Senn, and has an independent obligation to prevent misconduct by Sandra J. Senn, as well as to be responsible for the tortious conduct of its members.

250.    Sandra J. Senn set about to generally attack and disparage Jane Doe in response to the claims brought by her mother, and to do so outside of the litigation. Included in her strategy of attack and disparagement was a decision to defame the Plaintiff, in writing to third parties, accusing Jane Doe of (a) lying, (b) falsely reporting a crime against her, (c) of the felony conduct of abusing a vulnerable adult, meaning her mother, and (d) false claims of other misconduct because Jane Doe had asserted her rights.  At minimum, false publication in writing of (a) - (c) constitutes defamation *per se* which is actionable *per se* against either Sandra J. Senn individually and Senn Legal, LLC or, alternatively, against Senn Legal LLC and the clients of Sandra J. Senn acting in her representative capacity.

251.    Sandra J. Senn published the false information knowingly, or in reckless disregard of the falsity of her comments.

252.    Sandra J. Senn published multiple false and defamatory statements concerning Jane Doe.  The statements were not privileged.  They were made to a third party in writing, not made in court of in a court process, and are actionable *per se* and defamatory *per se*.

253.    Jane Doe is a private figure, not a public figure.

254.    Common law malice by Sandra J. Senn and Senn Legal LLC in making the defamatory statements is presumed as a matter of law because the statements are defamatory *per se* and actionable *per se*.  Damages from the defamation are presumed as a matter of law.

255.    That common law malice is presumed indicates that Sandra J. Senn individually and (because of her conduct) Senn Legal LLC are presumed to have been (a) activated by ill will, with the design to causelessly and wantonly injure Jane Doe, or (b) that the statements were published with such recklessness as to show a conscious indifference toward Jane Doe.  To the extent the conduct of Sandra J. Senn is ascribed to her clients through her agency, the conduct constitutes gross negligence by the City, McGowan, Wohlleb, Doxey, and Kouris.

256.    Sandra J. Senn and Senn Legal LLC also demonstrated actual malice and a willingness to misrepresent facts in taking no action when Leigh Anne McGowan testified falsely in her 2014 deposition that, for example, she had never before been deposed.  In fact she had been deposed in 2011 in yet another case brought over a warrantless entry by McGowan under color of state law, and both depositions were defended by Senn Legal, LLC.  Sandra J. Senn knew or should have known that

McGowan in 2014 was perjuring herself, yet Sandra J. Senn took no action to stop the behavior or correct it.  To the extent the conduct of Sandra J. Senn is ascribed to her clients through her agency, the conduct constitutes gross negligence by the City, McGowan, Wohlleb, Doxey, and Kouris.

257.  Sandra J. Senn and Senn Legal LLC are each liable to Jane Doe for actual and punitive damages as a result of the defamation of Jane Doe by Sandra J. Senn.  Alternatively, if Sandra J. Senn acted in her representative capacity, then Senn Legal LLC, the City, McGowan, Wohlleb, Doxey and Kouris are liable to Jane Doe for actual and punitive damages as a result of the conduct of Sandra J. Senn which constitutes gross negligence by the City, McGowan, Wohlleb, Doxey, and Kouris for their doing a thing which ought not to have been done.

258.  Only one recovery is sought for the tortious conduct by the Senn defendants.  Once Sandra J. Senn clarifies the capacity in which she engaged in defamation of the Plaintiff, and whether she asserts her own tortious behavior is the responsibility of someone other than herself through her conduct as the agent of other persons or entities, and that person or entity agrees, then this cause of action may be amended, and will be coordinated with a comparable defamation claim alleged in a separate federal civil action.

### For a Sixteenth Cause of Action:
### Declaratory Relief

259.  Allegations above are incorporated into this claim as if fully stated.

260.  Pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983 and 1986, the court should declare that the inadequate provisions of the City's present practice to permit officers to merely claim they had evidence rather than require them to have evidence constituting an "emergency" for warrantless entry violates Jane Doe's South

Carolina Constitutional Rights, as alleged above, specifically her rights under S.C. Const. Art. 1 Sec 3 (Privileges and Immunities, Due Process and Equal Protection), S.C. Const. Art. 1 Sec. 10 (Searches and Seizures, Invasion of Privacy), S.C. Const. Art. 1 Sec. 24 (Victim's Bill of Rights), her rights under state law, and her rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

261.    Jane Doe is entitled to declaratory relief as requested above.

**For an Seventeenth Cause of Action**
**Deprivation of Rights Under 42 USC §§ 1981 and 1983**
**Unauthorized Surveillance**
(Against Defendants The City, McGowan, Wohlleb, Doxey, and Kouris)

262.    Allegations above are incorporated into this claim as if fully stated.

263.    Acting through their agent Sandra J.Senn, the Defendants the City, McGowan, Wohlleb, and Doxey engaged in unauthorized surveillance of the Plaintiff.

264.    The state actor defendants are prohibited from surveillance without a reasonable basis to suspect criminal activity.  Criminal activity at Jane Doe's residence is uniformly disclaimed by the defendants, yet surveillance has been used by the state actor defendants, through Sandra Senn acting in her representative capacity.

265.    No proper basis exists for surveillance of Jane Doe.

266.    When the Defendants conducted surveillance without a proper basis violates Jane Doe's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

267.    Under federal law, each act of improperly authorized surveillance violated Jane Doe's rights.

268.    Jane Doe has a privacy interest protected by the First Amendment of the United States Constitution as well as by state law and the S.C. Constitution in Article 1 Section 10, and NCPD policy.

269.    The Senn Defendants in their representative capacity undertook surveillance of Jane Doe on behalf of state actor defendants, without a proper basis for that surveillance under NCPD policy.

270.    The state actor defendants are responsible for the conduct of the Senn Defendants in engaging in improper surveillance.

271.    The improper surveillance violated Jane Doe's privacy rights under federal law.

272.    Jane Doe is entitled to actual and punitive damages as allowed by law for each act of wrongful surveillance by the Defendants and their agent, the Senn Defendants.

273.    Jane Doe is entitled to actual damages under state law for each act of wrongful surveillance by the Defendants and their agents, the Senn Defendants.

### Demand for Jury Trial

274.    Plaintiffs on behalf of Jane Doe demand a trial by jury.

### Claim for Relief

275.    South Carolina statutes make two provisions for damages from claims arising from the conduct of police officers, depending on the nature of the claim.  To the extent state law applies, these claims are brought within the authority of those provisions, and apply to these Defendants.

276.    For certain acts of gross negligence and other misconduct, S.C. Code § 15-78-120 provides for damage limits of $300,000 and $600,000 per occurrence from actions other than negligence as to medical or dental care.  Some actions alleged in this Complaint allege gross negligence, and multiple occurrences of gross negligence by the

Defendants.  This provision of South Carolina law applies to the individual Defendants and to the City of North Charleston through the conduct of the individual Defendants.

277.    For violations of 42 U.S.C. § 1983, also alleged in this Complaint against the individual Defendants, S.C. Code § 1-11-460 authorizes the South Carolina Budget and Control Board to pay judgments for one employee of between $1 million and $5 million, subject to a maximum of $20 million in excess of $5 million in one fiscal year. This Complaint alleges violations of 42 U.S.C. § 1983 against four individual employees of North Charleston.  That provision of South Carolina law applies to the claims against each of the individual Defendants.

278.    S.C. Code § 15-78-90 authorizes the Budget and Control Board, or the political subdivision where it has not purchased insurance from the Budge and Control Board, to "compromise any claim."  This provision of South Carolina law applies to these Defendants, and includes authority to compromise a claim that the Defendants acted so as to violate 42 U.S.C. § 1983 in depriving Jane Doe of her civil rights.  That provision of South Carolina law applies to each of the individual defendants and to the City of North Charleston.

279.    Upon information and belief, each of the Defendants in this action is covered by a tort liability policy issued by the South Carolina Insurance Reserve Fund. Alternatively, or in addition, the persons sued individually in this action are protected by the support provided by South Carolina through S.C. Code § 1-11-460, and the South Carolina Budget and Control Board has express authority to compromise the claims, including the civil rights claims.

280.    The practice of the South Carolina Insurance Reserve Fund is to pretend that these statutory obligations under South Carolina law do not exist.

281.    Under the Supremacy Clause of the United States Constitution, no state law can limit damage claims for any violation of 42 U.S.C. § 1983.  The provisions of S.C. Code § 1-11-460 are not limitations on damage awards under 42 U.S.C. § 1983, but an assurance by the State that each police officer found liable in his or her individual capacity will be supported by the State fisc up to $5 million, subject to a maximum of $20 million in excess of $5 million in one fiscal year.  The Supremacy Clause applies to each individual Defendant and to the claims against the City of North Charleston, and negates any proposed cap on damages.

282.    Beyond that $25 million limitation on the contribution the State will make towards any judgment under 42 U.S.C. § 1983, South Carolina law apparently leaves the individual officer Defendants in this action to fend for himself or herself, although the City of North Charleston by ordinance 1-11 would appear to volunteer to indemnify any award against any police officer (1-11[a]), as well as to impose individual liability in addition to liability of the City (1-11[b]).  Under the ordinance, individual liability of the officers would constitute a condition of employment with the city, as a supplement to the provisions of the South Carolina Tort Claims Act.

283.    Wherefore, Plaintiffs on behalf of Jane Doe requests that this Court:

    a.  Enjoin Defendant City from failing to have adequate procedures sufficient to protect citizens from fabricated warrantless entry claims by police without proper proof and documentation; from failing to develop adequate training and procedures sufficient for that purpose; from ceasing its custom or policy for its officers to simply claim evidence existed rather than requiring evidence; from failing to expend sums sufficient to have the proper training and resources for its

personnel to effectively provide that standard of performance; and from operating its police department in any manner which deprives Jane Doe and other citizens of Constitutionally protected rights.

b.  Award actual and punitive damages, individually, against individual Defendants, supplemented by the resources of the City, as provided by City ordinance 1-11.

c.  Award actual damages and injunctive relief under the South Carolina Tort Claims Act against the City of North Charleston and to enjoin it from failing to develop and fund proper policies and training for its officers to fully protect the interests of Constitutional rights from fabricated warrantless "emergency" entry.

d.  Award actual damages against the City of North Charleston for its deliberate indifference to training its officers in the proper Constitutional limits of authority, for its custom, policy, or practice to have its officers violate Jane Doe's Constitutional rights.

e.  Award declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983, that inadequate protections made available to Jane Doe violated her First, Fourth and Fourteenth Amendment rights to the United States Constitution, her rights under the South Carolina Constitution as specified above, and that the continuing policy of allowing officers to fabricate evidence is inadequate as a protection against abuse of Constitutional rights.

    f.   Award compensatory and punitive damages to Jane Doe as determined by the finder of fact against the various Defendants under the various provisions of by state and federal law.

    g.   Award compensatory and punitive damages to Jane Doe as determined by the finder of fact against Sandra J. Senn and Senn Legal LLC, or, alternatively, against Senn Legal LLC and the various Defendants due to the conduct of their agent, Sandra J. Senn.

    h.   Award Jane Doe's costs of suit and reasonable attorneys' fees under 42 U.S.C. § 1988, and

284.  For such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/ Gregg Meyers

Gregg Meyers, Federal I.D. No. 4183
Jeff Anderson & Associates, PA
366 Jackson Street, Suite 100
Saint Paul, MN 55101
651-227-9990
Gregg@andersonadvocates.com

Attorney for Plaintiff